UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00006-GNS-CHL

ROBYN N. SHALLEN                                                                          PLAINTIFF

v.

DEPARTMENT OF THE ARMY                                                         DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 31) and Defendant's Motion to Exceed Page Limit (DN 35). The motions are ripe for adjudication. For the reasons stated below, Defendant's Motion to Exceed Page Limit is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**.

**I.      BACKGROUND**

This action is brought by Plaintiff Robyn N. Shallen ("Shallen") against Defendant Department of the Army (the "Army") for allegedly violating Title VII of the Civil Rights Act of 1964. (Compl. ¶ 1, DN 1).

Shallen claims the Army discriminated against her based on her gender by not promoting her to the GS-12 position of Casualty and Mortuary Affairs Specialist ("CMAS"). (Comp. ¶ 9). Shallen has worked for the Army since April 2012 and has been as a GS-11 CMAS since 2015. (Compl. ¶ 9). The Army posted a job listing for CMAS, GS-0301-12 in April 2016. (Compl. ¶ 11). The selecting officer for the position was Joseph Messina, LTC, Chief Casualty Investigations ("Messina"), who had supervised Shallen in her GS-11 CMAS position. (EEOC Hr'g Tr. vol. 1, 68:6-11, May 7, 2018, DN 9-3). The job posting listed criterion by which candidates would be

evaluated and specifically stated that education could not be a substitute for GS-11 experience. (Compl. ¶ 11).

Of 19 individuals who applied for the position, Shallen was one of 11 selected for an interview. (Compl. ¶¶ 23, 26). Candidates were selected for interviews based on scores they received from three panelists applying a scoring matrix to the candidates' resumes. (Compl. ¶¶ 23-26). The same three panelists—Messina, Steve Young ("Young"), and Marlene Rogers ("Rogers")—scored the candidates' interviews. (Compl. ¶ 26). Pursuant to the Army's hiring policy, the candidate with the highest combined resume and interview score would be recommended for the position. (EEOC Hr'g Tr. vol. 1, 189:16-23). After the interviews, Young and Messina revised their scores—including lowering Shallen's score and raising the scores of Antonio Rollerson ("Rollerson"). (Compl. ¶¶ 26-27). After these revisions, Rollerson, a male, had the highest combined score and was offered the position. (Compl. ¶ 29).

Shallen alleges that the matrix and scoring process were used pretextually to mask the Army's discrimination. (Pl's. Resp. Def.'s Mot. Summ. J. 20, DN 34). In 2019, Shallen filed this action alleging a violation of Title VII. (DN 1). Before the close of discovery, the Army moved to dismiss or in the alternative for summary judgment (DN 6), which was denied. (DN 18). The Army subsequently moved again for summary judgment upon completing discovery. (DN 31). The motions are ripe for decision.

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [by showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. The Law-of-the-Case Doctrine

Shallen alleges that the law of the case doctrine prevents the Army from repeating arguments previously made in its prior dispositive motion. (Pl.'s Resp. Def.'s Mot. Summ. J. 2). Under the law of the case doctrine, "upon remand from an appellate court, a trial court 'is bound to "proceed in accordance with the mandate and law of the case as established by the appellate court."'" *Edwards v. Grand Rapids Cmty. Coll.*, No. 1:09-CV-1067, 2012 WL 13018626, at *2 (W.D. Mich. Mar. 26, 2012) (citing *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006)). Summary judgment motions, however, "are not considered final orders and may be reconsidered." *Id.* at *4 (citing *Phelps v. McCoy*, 286 F.3d 295 (6th Cir. 2002)); *see also Deere & Co. v. FIMCO Inc.*, No. 5:15-CV-105-TBR, 2017 WL 2239943, at *2 (W.D. Ky. May 22, 2017) ("Courts have the 'inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.'" (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991))). For example, the Sixth Circuit held that the law of the case doctrine did not preclude a trial court from granting summary judgment after previously denying it twice before. *Cale v. Johnson*, 861 F.2d 943, 947 (6th Cir. 1988), *abrogated on other grounds by Thaddeus-X v. Blatter*, 175 F.3d 378, 387-88 (6th Cir. 1999). Therefore, the law of the doctrine of the case does not preclude the Court from considering the merits of the Army's present motion

### B. Title VII Discrimination Claim

Shallen alleges that the Army discriminated against her based on her gender in violation of Title VII. (Compl. ¶ 31). To prove a claim of gender discrimination, a plaintiff may rely on direct or circumstantial evidence. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 237 (6th Cir. 2005). In the absence of direct evidence—which does not exist in this case—a plaintiff must rely

on circumstantial evidence to prove a claim based upon the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, Shallen bears the initial burden of proving a *prima facie* case of gender discrimination. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) (citation omitted). If she meets that burden, the Army must present a legitimate, nondiscriminatory reason for any adverse employment action. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 310 (6th Cir. 2000) (citation omitted). If the Army meets its burden, Shallen bears the ultimate burden of proving pretext. *McDonnell Douglas Corp.*, 411 U.S. at 804.

### 1. Prima Facie *Case*

For a claim for employment discrimination, the plaintiff must prove that she has suffered an adverse employment action, meaning that the plaintiff must "establish that [she] has suffered a materially adverse change in the terms or conditions of employment because of the employer's action." *Nguyen*, 229 F.3d at 562 (internal quotation marks omitted) (citation omitted). "For the purposes of Title VII, a failure to promote is an adverse employment action." *Id.* (citation omitted).

In order to establish a *prima facie* case of discrimination based on failure to promote, the plaintiff must prove that:

> (1) [she] is a member of a protected class; (2) [she] applied for and was qualified for a promotion; (3) [she] was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time plaintiff's request for promotion was denied.

*Id.* (citation omitted). The Army does not dispute that Shallen has met her burden of proving a *prima facie* case and thus the Court will not address this issue.[1]

---

[1] Shallen incorrectly contends that the Army waived any argument that she has not met her *prima facie case* in the Army's prior dispositive motion (DN 6), but the Army's motion clearly states that "[f]or the purposes of this motion only, Defendant concedes Plaintiff can establish a prima facie case on evidence record . . . ." (Def.'s Mem. Supp. Mot. Dismiss 15, DN 6-1). The Army,

### 2. *Legitimate, Nondiscriminatory Reason*

Once the plaintiff has established a *prima facie* case, the burden then shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action. *Parry*, 236 F.3d at 310 (citation omitted). The Army asserts that it hired Rollerson over Shallen because: (1) Shallen did not have as much leadership and team building experience as Rollerson; and (2) Rollerson had the highest resume and interview score and was thus recommended by the panelist for the promotion. (Def.'s Mot. Summ. J. 21, DN 31). This explanation satisfies the Army's burden of explanation. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.").

### 3. *Pretext*

Once the defendant has proffered a legitimate, nondiscriminatory reason for the adverse employment action, the burden of proof shifts back to the plaintiff to prove that the given reason is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804. A plaintiff can prove pretext by demonstrating that the proffered reason "(1) had no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (internal quotation marks omitted) (citation omitted).

---

however, did not dispute that Shallen met her burden of proving a *prima facie* case in either its motion or its reply and thus waived any argument about Shallen's *prima facie* case for the purposes of this motion as well. *See United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2005) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . ." (citation omitted)).

6

"The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive or even obviously contrived, does not necessarily established that the plaintiff's proffered reason . . . is correct." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) (internal quotation marks omitted) (citation omitted). The factfinder thus must not only disbelieve the reason proposed by the employer, but also believe that the employer acted with discriminatory intent. *Id.* at 147. Discriminatory intent can be inferred from the falsity of the employer's explanation. *Id*. In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court found:

> The factfinder's disbelief of reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.

*Id*. at 146 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993)). In other words, while evidence that the defendant's proffered reason is false is just one form of circumstantial evidence of discrimination, "it may be quite persuasive." *Id*. at 147 (citation omitted).

Shallen presents enough circumstantial evidence from which a reasonable jury could find that the Army was motivated by discrimination rather than by finding a candidate with the most leadership experience. Adding job criteria not listed in the original job posting can be evidence of pretext. *Browning v. Dep't of Army*, 436 F.3d 692, 696 (6th Cir. 2006). In *Courtney v. Biosound*, 42 F.3d 414 (7th Cir. 1994), the court affirmed in part the award of summary judgment for the plaintiff because the employer relied upon a criterion not listed in the original job posting as its proffered reason its hiring decision. *Id.* at 421. The court found that in light of defendant's claim that it placed a "high premium" on finding a candidate who could meet its "unique communication needs," a reasonable jury "could conclude that the employer would have included this qualification

7

in the job listing had it honestly believed that it was of primary importance for the new position."
*Id.*

In this instance, one of the Army's stated reasons for hiring Rollerson over other candidates is that the Army was looking for a candidate with leadership and teambuilding skills. (Def.'s Mot. Summ. J. 21). Messina, who was the selecting officer for the position, testified that he placed special emphasis on leadership and teambuilding experience in his hiring decision.[2] (EEOC Hr'g Tr. vol. 1, 178:22-179:5, DN 9-3). Several interview questions focused on leadership, and leadership was included as part of the resume scores. (Resume Scoring Matrix 2, DN 6-4; *see* Army Investigation Report 213-17, DN 9-1). The Army's job posting for this position listed five areas candidates would be evaluated in: (1) knowledge of casualty investigations; (2) knowledge in researching facts for information/decision papers; (3) knowledge of laws, regulations, and policies; (4) knowledge of analysis and evaluation techniques; and (5) skill in effective written communication. (Army Investigation Report 427-29). Leadership, however, is not listed anywhere in the job posting. (Army Investigation Report 427-29). Thus, like in *Biosound*, the inclusion of a subjective quality like leadership and teambuilding skills as a critical criterion, despite not being mentioned in the job posting, could lead a reasonable jury to believe that addition of the criteria was pretextual. *Biosound*, 42 F.3d at 421.

The same is true for the scoring matrix's strong emphasis on education. The job posting specifically states: "Some federal jobs allow you to substitute your education for the required specialized experience in order to qualify. For this grade, you must meet the qualification

---

[2] "Yeah, I was looking for somebody with a lot of leadership qualities. I was looking for somebody with a lot of leadership qualities. I was looking for somebody that could develop a team and run a team. There had been a lot of personality issues in the past and we were getting past those." (EEOC Hr'g Tr. vol. 1, 178:22-179:1).

requirement using experience alone – **NO** substitution of education for experience is permitted." (Army Investigation Report 427-29). The resume scoring matrix, however, allowed up to 5 points for military education and 5 points for civilian education. (Resume Scoring Matrix 2). Additionally, one of the panelists, Rogers, testified that she gave Shallen zero out of a possible 5 points for oral and written communication because Rogers was told that the communication score was supposed to be directly correlated to the individual's education. (EEOC Hr'g Tr. vol. 1, 147:6-23). Shallen received no points from any of the three panelists for either military or civilian education, which was a total reduction in Shallen's score by 35 points. (Army Investigation Report 559, 560, 562). Shallen was effectively penalized on the education criteria even though the job posting stated that education would not be considered as a substitute for the GS-11 experience that unquestionably Shallen had. (Army Investigation Report 559, 560, 562). Placing this sort of emphasis on education directly contradicts the job posting and thus a reasonable jury may conclude that the use of education as a criterion was pretextual.

  The Army also relies on the scoring process and matrix to justify its hiring decision, stating that Rollerson received the position because he had the highest combined interview and resume score. (EEOC Hr'g Tr. vol. 1, 189:17-22; 201:3-6; Def.'s Mot. Summ. J. 3, 9; Def.'s Reply Mot. Summ. J. 11, DN 36). The Army has proffered a resume scoring matrix allegedly used to score the candidates' resumes. (Resume Scoring Matrix 2). Messina testified that while other candidates may have been qualified, Rollerson was awarded the position because he obtained the highest combined resume and interview score. (EEOC Hr'g Tr. vol. 1, 189:17-22). While employers may use a matrix to score and rank applicants based on subjective criteria, a plaintiff may still prove pretext by offering evidence indicating that the subjectivity was used as pretext for discrimination. *Brown v. EG&G Mound Applied Tech., Inc.*, 117 F. Supp. 2d 671, 680 (S.D. Ohio 2000). To rely

9

on subjectivity, however, a plaintiff must offer evidence of actual discrimination, and not just the assertion that some of the matrix components were susceptible to subjective determinations. *Id.*

Shallen produces sufficient evidence from which a reasonable jury could find that the matrix and the scoring system were used as a pretext for gender discrimination in the Army's hiring process. Most notably, Shallen points to the fact that her and one of the other female applicant's scores were significantly lowered after the interview process was over, while multiple panelists raised Rollerson and other male applicant's scores. (EEOC Hr'g Tr. Vol. 1, 160:9-17, 161:23-162:5, 162:13-17, 193:16-21, 195:6-9). After the interviews were over, Rogers lowered Shallen's interview score from a 46 to a 36. (EEOC Hr'g Tr. vol. 1, 160:9-17). She also lowered the scores of another female applicant, Janet Newell, ("Newell"), from 44 to 34. (EEOC Hr'g Tr. vol. 1, 161:23-162:5). Finally, Rogers also raised Rollerson and Andy Newbrough's ("Newbrough") scores, both males who ended up finishing as the top two candidates, by four points and two points respectively. (EEOC Hr'g Tr. Vol. 1 162:13-17). Young also went back after the interviews and increased Rollerson's score by 6 points and Newbrough's score by four points. (EEOC Hr'g Tr. vol. 1, 193:16-21). After these manipulations, Rollerson was the top candidate, followed by Newbrough and then two more male candidates. (EEOC Hr'g Tr. vol. 1, 195:6-9). When a score revision produces a biased result, it may be evidence of pretext. *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 631 (6th Cir. 2008). After the manipulation, the three female candidates finished in the bottom half of applicants. (EEOC Hr'g Tr. vol. 1, 195:6-9). Prior to the score revisions, the top four candidates included 2 females, Shallen and Newell. (EEOC Hr'g Tr. vol. 1, 195:21-197:21).

The panelists offer different explanations about the alterations in the scoring. Rogers testified that it was because she had rated the earlier interviews too high, but she raised

Newbrough's score and he was the first to be interviewed. (EEOC Hr'g Tr. vol. 1, 159:20-164:23). She also lowered Newell's score, who was the last to be interviewed. (EEOC Hr'g Tr. vol. 1, 159:20-164:23). Young on the other hand, testified that he adjusted the scores because of technical difficulties, but Messina testified that there were no technical difficulties during the interviews. (EEOC Hr'g Tr. vol. 1, 112:7-113:4, 192:15-19).

Inconsistency regarding the stated motivation for the scoring changes and the way in which the matrix was applied could lead a jury to believe that the matrix was used pretextually. For example, Messina testified in one instance that he used his "direct knowledge of [Shallen's] written and oral communication skills" to determine her written and oral communication score. (EEOC Hr'g Tr. vol. 1, 187:2-4). However, when awarding her a 1 of 5 for leadership he said that he only considered her resume despite having personal knowledge that she had served as team leader in her current GS-11 position. (EEOC Hr'g Tr. vol. 1, 68:6-11, 183:1-2). Likewise, even objectively looking at Shallen's leadership score, her resume included 11 years of team leadership experience. (Shallen Resume 2-11, DN 12-4). Messina, however, awarded her only a 1 out of 5 even though according to the matrix she clearly should have received a 5 based on her years of experience. (EEOC Hr'g Tr. vol. 1, 68:6-11, 183:1-2; Resume Scoring Matrix 2).

In *Brown v. EG&G Mound Applied Technologies, Inc.*, the court found that the plaintiff failed to prove pretext in part because she "failed to demonstrate that the matrix score was inaccurate in the skills and attributes that it did measure." *Brown*, 117 F. Supp. 2d at 680. Under the matrix used in this case, Shallen should have received a 5 for leadership if she had even 5 years of leadership experience, but Messina gave Shallen a 1 even though her resume demonstrated 11 years of leadership experience. (Shallen's Resume 2-11; Resume Scoring Matrix 2; EEOC Hr'g

11

Tr. vol. 1, 183:1-2). A reasonable jury could infer from Messina's inaccurate application of the scoring matrix that the matrix was used pretextually.

> As the Sixth Circuit has noted regarding failure-to-promote cases:
>
> Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as if not better qualified than the successful applicant, and the record contains "other probative evidence of discrimination."

*Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (citing *Bartlett v. Gates*, 421 F. App'x 485, 490-91 (6th Cir. 2010) (citation omitted). A reasonable jury could find that Shallen is as qualified, if not better qualified, than Rollerson because unlike Rollerson, Shallen met the requirements of the job posting. The job posting specifically stated that "one year of specialized experience equivalent to the GS-11 grade level in the Federal service." (Army Investigation Report 429). Rollerson, on the other hand, was only working at a GS-7 level at the time he was hired. (EEOC Hr'g Tr. vol. 1, 91:24-25). This experience was not only required by the job advertisement, but the advertisement also specifically stated that education could not be a substitute for this experience. (Army Investigation Report 427-29). Therefore, the Army's selection a male candidate who did not meet the job requirements over a qualified female candidate could certainly indicate pretext which creates a triable issue of fact for the jury.

Title VII cases can be proven with circumstantial evidence alone. *McDonnell Douglas Corp.*, 411 U.S. at 792. While each piece of circumstantial evidence Shallen points to may not be enough to indicate pretext on its own, taken together Shallen has produced sufficient circumstantial evidence for a reasonable jury to infer that Shallen was discriminated against based on her gender.

There is thus enough circumstantial evidence and questions of fact for summary judgment to be premature. *Hilde v. Cty. of Eveleth*, 777 F.3d 998, 1007 (8th Cir. 2015).

Therefore, the Army's motion is denied.

### B.  Plaintiff's Motion to Exceed Page Limit

The Army moves for leave to file a response in excess of the page limitation imposed by LR 7.1(d). Shallen does not oppose the Army's motion. The Court will grant this motion.

### IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Summary Judgment (DN 31) is **DENIED**.

2. Defendant's Motion to Exceed Page Limit (DN 36) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

February 28, 2022

cc: counsel of record